AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

# UNITED STATES DISTRICT COURT
### for the

_____ District of _____

|  |  |  |
|---|---|---|
| | ) | |
| *Plaintiff/Petitioner* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| *Defendant/Respondent* | ) | |

**APPLICATION TO PROCEED IN DISTRICT COURT WITHOUT PREPAYING FEES OR COSTS**
**(Short Form)**

I am a plaintiff or petitioner in this case and declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief requested.

In support of this application, I answer the following questions under penalty of perjury:

1. *If incarcerated.* I am being held at: _____ .
If employed there, or have an account in the institution, I have attached to this document a statement certified by the appropriate institutional officer showing all receipts, expenditures, and balances during the last six months for any institutional account in my name.  I am also submitting a similar statement from any other institution where I was incarcerated during the last six months.

2. *If not incarcerated.*  If I am employed, my employer's name and address are:

My gross pay or wages are:  $ _____ , and my take-home pay or wages are:  $ _____ per
*(specify pay period)* _____ .

3. *Other Income.* In the past 12 months, I have received income from the following sources *(check all that apply)*:

| | | |
|---|---|---|
| (a) Business, profession, or other self-employment | ❏ Yes | ❏ No |
| (b) Rent payments, interest, or dividends | ❏ Yes | ❏ No |
| (c) Pension, annuity, or life insurance payments | ❏ Yes | ❏ No |
| (d) Disability, or worker's compensation payments | ❏ Yes | ❏ No |
| (e) Gifts, or inheritances | ❏ Yes | ❏ No |
| (f) Any other sources | ❏ Yes | ❏ No |

*If you answered "Yes" to any question above, describe below or on separate pages each source of money and state the amount that you received and what you expect to receive in the future.*

AO 240  (Rev. 07/10) Application to Proceed in District Court Without Prepaying Fees or Costs (Short Form)

4. Amount of money that I have in cash or in a checking or savings account:  $ _____ 0.00 .

5.  Any automobile, real estate, stock, bond, security, trust, jewelry, art work, or other financial instrument or thing of value that I own, including any item of value held in someone else's name *(describe the property and its approximate value)*:
I have a1991 Ford F-250 valued at $500, in poor condition. odometer having turned over, with cracked window, and bald tires, used primarily to get to medical appointments.

6. Any housing, transportation, utilities, or loan payments, or other regular monthly expenses *(describe and provide the amount of the monthly expense)*:
My monthly rent is $850 a month. My auto insurance is $95 a month.

7.  Names (or, if under 18, initials only) of all persons who are dependent on me for support, my relationship with each person, and how much I contribute to their support:
None.

8.  Any debts or financial obligations *(describe the amounts owed and to whom they are payable)*:

*Declaration:*  I declare under penalty of perjury that the above information is true and understand that a false statement may result in a dismissal of my claims.

Date: _____10/31/2018_____

_____
*Applicant's signature*

_____David Lewis_____
*Printed name*

Paul B. Meadowbrook, P.C.
913 1st Ave. E.
Albany, OR 97321
Tel (541) 7914544
Fax (541) 7914710
OSB No. 793226
paul@paulmeadowbrook.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF OREGON

EUGENE DIVISION

DAVID LEWIS,                                   )
                                               )
                    Plaintiff,                 )     No.18-cv-2028
          v.                                   )
                                               )     COMPLAINT
BAY AREA HEALTH DISTRICT, doing                )
business as Bay Area Hospital, and             )     (Federal Civil Rights Action with
VICTORIA CANNON, individually,                 )     supplemental Oregon claims)
                                               )
                    Defendants.                )     Jury trial demanded
                                               )

JURISDICTION AND VENUE

     1.     This is a federal civil rights claim against both defendants for violation of plaintiff's First, Fifth and Fourteenth Amendment rights to free speech and petition the government for redress of grievances; plaintiff seeks economic and noneconomic damages, punitive damages and injunctive relief under 29 U.S.C. §§1983 and 1988.

     2.     The federal claim includes supplemental Oregon tort claims for negligence against defendants Bay Area Hospital District and Victoria Cannon.

     3.     Plaintiff David Lewis at times material to this complaint resided in Coos County, Oregon.

     4.     Defendant Bay Area Hospital District is an Oregon municipal

PAGE 1                                                          COMPLAINT
                                              *Lewis v. Bay Area Hospital District*

corporation that operates a public hospital under the assumed business name Bay Area Hospital.

5.     Defendant Victoria Cannon is the Bay Area Hospital "patient advocate" who is named individually for acting under color of law on the federal claim; she is not included as a defendant on the supplemental state tort claim.

6.     Jurisdiction for federal claims is provided by 28 U.S.C. § 1331.

7.     Jurisdiction over supplemental state tort claims is provided by 28 U.S.C. §1367.

8.     Venue is appropriate in the Eugene Division of United States District Court for the District of Oregon under 28 U.S.C. § 1391(b) and LR 32.

FIRST CLAIM

(Federal Civil Rights Violations)

9.     Plaintiff realleges paragraphs 1-5.

10.    Plaintiff David Lewis is a Coos County resident with complex, chronic, painful but incurable cardiovascular disorders caused by a nearly fatal heart attack who subsists on $950 monthly disability payments plus food stamps.

11.    Defendant Bay Area Health District is a Coos County municipal corporation that owns and operates Bay Area Hospital (hereafter referred to collectively as "hospital").

12.    On or about January 11, 2018 Plaintiff arrived at the hospital emergency room by ambulance.

13.    Plaintiff brought his current prescribed home medications in their containers, including morphine, so doctors would know his medicine regimen.

14.    Plaintiff's Hospital electronic medical records described his medical condition, including his need for morphine to treat his nearly constant pain and discomfort.

15.    Hospital physicians prescribed morphine three times a day while Plaintiff was a hospital patient.

16.    When hospital staff moved Plaintiff from the ER to an inpatient room

PAGE 2                                              COMPLAINT
                                    *Lewis v. Bay Area Hospital District*

hospital nurses confiscate Plaintiff's home medications over Plaintiff's objections.

17.    Sometime before Plaintiff's discharge Sunday, January 14, 2018 a hospital pharmacist or a pharmacy tech erroneously sent Plaintiff's morphine home with an unrelated patient with the same last name but different first and middle names.

18.    The error happened because a Hospital pharmacist or pharmacy tech failed to ask the other patient to state his full name, to state his birth date,  or to show a picture ID, before sending the other patient home with Plaintiff's morphine and personal identifying information.

19.    Plaintiff learned of the error at discharge when nurses checked on his morphine and told him Plaintiff it was sent home with another patient.

20.    Despite knowing that Plaintiff's morphine was mistakenly sent home with another patient the Hospital, including its doctors and pharmacists, did not at discharge replace Plaintiff's morphine from home or even provide Plaintiff a signed paper prescription needed to obtain that highly restricted drug.

21.    Between the time the hospital sent his morphine home with the other patient to when Plaintiff was able to obtain a new prescription from his primary care provider, he endured several days of significant additional physical pain because of lack of morphine.

22.    As a result of the hospital's actions described in the foregoing paragraphs, including the hospital's indifference and abandonment of plaintiff after depriving him of his morphine, as well as plaintiff's increased physical pain caused by lack of his morphine, Plaintiff experienced great mental and emotional distress, including anger, at being so mistreated.

23.    The actions of the Hospital and its physicians and pharmacists described in this claim physicians' Hippocratic Oath, hospital accreditation standards of the Joint Commission, Oregon laws and administrative rules regulating the practice of pharmacy, of medicine and of the care and custody of medical records, and thereby fell below the standard of medical care for hospitals,

PAGE 3                                                                    COMPLAINT
                                                     *Lewis v. Bay Area Hospital District*

doctors and pharmacists in Oregon and were negligent.

24. At all times material to this claim Plaintiff had rights guaranteed by the First, Fifth and Fourteenth Amendments of the U.S. Constitution to free speech and to petition his government for redress of grievances.

25. About five days after the Hospital sent Plaintiff's morphine home with the other patient, the Hospital pharmacist provided Plaintiff with a copy of the other patient's medical information and identifying information and stated "someone is going to lose their job."

26. On February 6, 2018 following the actions described in this claim, Plaintiff's lawyer served a ORS 30.275 tort claim notice stating that he intended to bring a lawsuit against the hospital arising from sending Plaintiff's morphine home with another patient and sharing Plaintiff's protected information with that other patient.

27. The tort claim notice was required to allow Plaintiff to take longer than 180 days within which to file a legal action.

28. On and after February 6, 2018 Plaintiff publically criticized the Hospital for the medication mixup and privacy invasion, including in person, orally and in writing online, including criticism addressed to local online community forums and to state regulatory agencies.

29. On information and belief, state agencies, Joint Commission and one or more employees told the Hospital about Plaintiff's public complaints criticizing the Hospital's actions described in the this claim.

30. Plaintiff was diagnosed with gallstones by a Hospital CT scan in 2017.

31. On or about June 4, 2018 the Hospital's insurance company acknowledged and denied Plaintiff's tort claim in writing, copying patient rights advocate Virginia Cannon.

32. On or about June 15, 2018 Plaintiff received a letter from Hospital privacy officer Cindy Winn stating that an unnamed employee had reported the

PAGE 4                                          COMPLAINT
                                    *Lewis v. Bay Area Hospital District*

breach of privacy described in the this claim, that she investigated the report and that she found it to be substantiated.

33.     Plaintiff asked Winn whether the Hospital advised her that about five days after the Hospital breached his privacy rights that a Hospital pharmacist provided Plaintiff with copies of medical records for the patient who was mistakenly sent home with Plaintiff's morphine.

34.     Winn said no, adding but that it looked like she'd be writing another letter.

35.     In late Spring or early June, 2018 the Hospital scheduled a consult for Plaintiff with a surgeon regarding a painful and longstanding gallstone problem.

36.     The surgeon and plaintiff made a plan to surgically remove the gallstones subject to surgery approval by a Hospital cardiologist.

37.     Nothing moved forward and the Hospital asked Plaintiff to see a second surgeon from the same office as the first surgeon without explaining why.

38.     The second surgeon also agreed to do the surgery subject to the cardiologist's approval.

39.     Plaintiff saw the cardiologist, who requested and obtained from Plaintiff medical releases for all prior records regarding his heart, including records from medical providers in Kansas and California.

40.     Records received from Plaintiff's other medical providers included three pharmacological heart stress tests that would show that Plaintiff's heart could withstand the projected fifteen minute gallbladder surgery and that a possibly unneeded pharmacological heart stress test was more likely to kill Plaintiff than gallstone removal surgery.

41.     In connection with scheduling a pharmacological heart stress test Hospital Radiology clerical staff requested that Plaintiff sign an informed consent form stating that the pharmacological stress test could kill him, without complying with ORS 677.097, which provides:

(1) In order to obtain the informed consent of a patient,

PAGE 5                                                                 COMPLAINT
                                                    *Lewis v. Bay Area Hospital District*

Paul B. Paul B. Meadowbrook, P.C.   Attorney at Law
913 First Avenue E., Albany, OR 97321
Tel (541) 7914544    Fax (541) 7914710
paul@paulmeadowbrook.com

a physician or podiatrist shall explain the following: (a) In general terms the procedure or treatment to be undertaken; (b) That there may be alternative procedures or methods of treatment, if any; and (c) That there are risks, if any, to the procedure or treatment.

(2) After giving the explanation specified in ORS 677.097(1), the physician or podiatrist shall ask the patient if the patient wants a more detailed explanation. If the patient requests further explanation, the physician or podiatrist shall disclose in substantial detail the procedure, the viable alternatives and the material risks unless to do so would be materially detrimental to the patient. In determining that further explanation would be materially detrimental the physician or podiatrist shall give due consideration to the standards of practice of reasonable medical or podiatric practitioners in the same or a similar community under the same or similar circumstances.

42.    At no time did the hospital comply with the requirements of ORS 677.097 in that no doctor spoke with Plaintiff nor asked if Plaintiff wanted a more detailed explanation.

43.    At no time did defendants permit Plaintiff to speak with the Hospital radiologist or a cardiologist about ORS 677.097 matters.

44.    Plaintiff told radiology clerical staff who contacted him to schedule the pharmacological heart stress that he wanted to speak to a doctor about risks before proceeding, including whether three pharmacological stress tests weren't sufficient and whether the risks of death from the another stress test might be far riskier than having the fifteen minute gallbladder surgery.

45.    Radiological clerical staff told Plaintiff that doctors couldn't say anything.

46.    Plaintiff contacted the cardiologist's office, whose clerical staff told him that the only person he could speak with was Hospital "patient advocate" Victoria Cannon.

47.    Plaintiff phoned Cannon, who told him that because of his tort claim notice Hospital surgeons, cardiologists, radiologists and other medical staff were not allowed to speak with him about his past, present or future medical care.

PAGE 6                                                    COMPLAINT
                                         *Lewis v. Bay Area Hospital District*

Paul B. Paul B. Meadowbrook, P.C.   Attorney at Law
913 First Avenue E., Albany, OR 97321
Tel (541) 7914544    Fax (541) 7914710
paul@paulmeadowbrook.com

48.    The Hospital's actions constituted retaliation for Plaintiff's individual actions and those of his lawyer in providing a tort claim notice, plaintiff's intra-hospital and public complaints about the Hospital's breach of Plaintiff's right to privacy and for reporting to Winn the Hospital's breach of privacy of the patient whose records the Hospital pharmacist provided to Plaintiff.

49.    The Hospital's actions alleged in this claim in refusing to allow Plaintiff to speak with medical staff about his medical needs effectively denied Plaintiff medical care in the only hospital in the community.

50.    Defendants' actions constituted retaliation for the Plaintiff's exercise of right to free speech and to petition his government for redress of grievances protected by First, Fifth, and Fourteenth Amendments of the U.S. Constitution and 43 U.S.C. § 1983.

51.    As a result of the retaliation Plaintiff's primary care provider referred Plaintiff to Oregon Health Sciences University (OHSU) in Portland, several hours' drive from Coos Bay, where he was recently transported for medical treatment, and has further care scheduled in January, 2019.

52.    As a result of the travel to Portland Plaintiff has incurred, and will continue to incur, costs for travel and lodging that he wouldn't have incurred if he could have had care provided at the Hospital.

53.    As a further result of having to obtain health care in Portland, Plaintiff reasonably expects that it will delay by many months the surgery to remove gallstones, which make him constantly sick to his stomach.

54.    Plaintiff expects costs for medical transport to Portland and associated lodging costs in the Portland area over the next several years for ongoing care needs may exceed $100,000, entitling him to economic damages in that amount.

55.    The retaliation has caused Plaintiff substantial mental and emotional distress, for which Plaintiff seeks $100,000 noneconomic damages.

56.    Defendants' actions were wilful and undertaken to retaliate against

PAGE 7                                                        COMPLAINT
                                        *Lewis v. Bay Area Hospital District*

Plaintiff exercising his legal right to informed medical consent procedures and his legal right to publically criticize and to sue a municipal corporation to redress his grievances, entitling him to a punitive damage award of $100,000 to send a message to defendants and those in concert with them that citizens have rights.

57.    Plaintiff incurred and is entitled to filing fees, costs and reasonable attorney fees to be determine by the court in this case under 28 U.S.C. §§1920 and 1923 and 42 U.S.C. § 1988.

SECOND CLAIM

(Common Law Negligence – Morphine, Medical Records, Access to Medical Care)

58.    Plaintiff repleads paragraphs 9 to 55.

59.    Defendant conditioned urgently needed medical care on Plaintiff's waiver of his right to informed consent guaranteed by ORS 677.097, including without limitation the right to ask questions of attending physicians, compelling Plaintiff to obtain service from OHSU.

60.    The Hospital's actions effectively denied Plaintiff the right to obtain health care at the only hospital in the community.

61.    Conditioning access to medical care on relinquishment of his ORS 677.097 right to informed consent protocols falls below the standard of care of hospitals in Oregon and was negligent.

62.    Mistakenly sending home Plaintiff's morphine with another patient and not timely replacing the morphine falls below the standard of care of hospitals in Oregon and was negligent.

63.    Mistakenly disclosing Plaintiff's protected personal medical information to another patient falls below the standard of care of hospitals in Oregon and was negligent.

64.    Because of the hospital's negligence Plaintiff's primary care provider had to refer Plaintiff for care to Oregon Health Sciences University in Portland, severally hours' drive from his home in Coos Bay, with consequent significant additional expenses for travel and hotels.

PAGE 8                                                                                                          COMPLAINT
*Lewis v. Bay Area Hospital District*

65.    Incident to his travel to OHSU Plaintiff obtained medical records from the Hospital for review by OHSU medical staff.

66.    Plaintiff discovered medical record entries by Hospital surgeons that other Hospital ER and/or Hospital imaging had failed to timely provide CT gallbladder films which could and should have been removed in 2017, ending disabling and painful nausea symptoms.

67.    Failing to timely notify surgeons of Plaintiff's gallbladder CT scan fell below the standard of care of hospitals in Oregon and was negligent.

68.    Plaintiff is entitled to noneconomic damages of $100,000 for mental and emotional distress occasioned by the hospital's indifference, abandonment and physical pain caused by not replacing Plaintiff's morphine and by not timely notifying surgeons of his gallstones.

69.    Plaintiff incurred and is entitled to filing fees, costs and disbursements to be determine by the court.

WHEREFORE, THE PLAINTIFF PRAYS for judgment for him and against the Defendant as follows:

First Claim:   $100,000 noneconomic damages, $100,000 economic, $100,000 punitive plus costs, disbursements and reasonable attorney fees to be determined by the court.

Second Claim: $100,000 noneconomic damages, $100,000 economic damages, plus costs and disbursements to be determined by the court.

November 23, 2018            /s/ Paul B. Meadowbrook
                             Paul B. Meadowbrook, OSB  No. 793226

PAGE 9                                              COMPLAINT
                                    *Lewis v. Bay Area Hospital District*